Daniels, J.
The defendant was in the employment of the Panama Bailroad Company at Aspinwall, on the Isthmus, from the early part of January, 1885, until the early part of January, 1886. During a part of the time, the services rendered by him were those of a book-keeper. Clement Dupuy was the cashier of the company at the same place. He was absent from the Isthmus from the 5th of May until the early part of July, and also from the middle of August until near the middle of October, 1885; and during those periods the defendant, who was alone served with process and appeared in the action, discharged his duties in the capacity of cashier of the company. After the closé of these services of the defendant, it was claimed by the company that a deficit was found in its cash accounts amounting to the sum of $48,702.21 in gold; and the object of the action was to render the defendant accountable for this deficit to the extent of the demand for judgment contained in the complaint, which was the sum of $40,000, with interest from the 1st of January, 1886; and the jury, by their verdict, held him liable for this sum of money. On the 31st of March, 1886, the buildings in the town, including those of the railway company, were burned by persons engaged in an insurrection against the local government. The books of the company were destroyed by the fire, but its funds were afterwards found to be uninjured; and, on the basis of the amount of money in gold and silver, the cash accounts of the company were again opened and continued. Monthly statements of its affairs were transmitted to the office of the company in the city of Hew York, but the evidence proved the fact to be that the accounts for the month were not completed at the end of the time included in the monthly statements, but were made up and completed subsequent to the termination of each month. It also appeared, from the evidence, that the entries in the books were made from memoranda or slips furnished by the teller to the book-keeper. The accuracy of these memoranda or statements was not proved by the witnesses, neither had they been preserved after the entries were made, and accordingly could not be appealed to or examined, to determine whether the books had been accurately kept or not. In the course of the trial, and from evidence produced on behalf of the plaintiff, it did appear that discrepancies were found in the accounts, but it was claimed by the defendant that the books themselves had been inaccurately kept.
A large part of the business of the company was transacted with the canal company, and that company was shown not to have been prompt in liquidating or settling its monthly accounts, and that the monthly charges which should be paid by the canal company were included as so much cash in the monthly accounts of the plaintiff. The canal company, in September, 1885, delivered its draft for the sum of $50,000 to the cashier of the plaintiff; and this draft was credited to the canal company in the account for the preceding month of July, to which the payment to be secured by it was applicable. This draft was transmitted to the Hew York office on the 16th of September, and there received on the 24th of the same month. In an account afterwards transmitted, in the same manner, for the month of September, 1885, this draft was again credited in favor of the cashier for the sum of $50,000; and the fact of this credit having been made in this manner during the period of time when the financial affairs of the company were under the charge of the defendant was a circumstance indicating by itself the existence of a consciousness that there was a deficit in this, or nearly this, amount in the cash accounts of the company. It was a circumstance, if it was admissible against the defendant, which in the minds of a jury would be attended with great force in the way of maintaining the plaintiff’s allegations. But while this was contained in the monthly statement for September, it was proved upon the trial, by the witnesses produced on behalf of the plaintiff, that the account containing this credit was not received at the office of the company in Hew York until the 25th of Hovember, 1885; and from the manner in which the business was done, and the accounts were transmitted, it is entirely evident that it must *530 have been made out some time during that month. The defendant was not at the Isthmus any time in the month of November; and the statement which in this manner was transmitted, was not shown to have been in any respect made out by himself, or by any other person acting under his direction or in collusion with him. At the time when it was made, the cashier of the company, Dupuy, had charge of its financial affairs, and he subscribed this statement, containing this second credit for the $50,000, as cashier and auditor, for E. S. Charlier, acting cashier and auditor. But there was no evidence in the case tending in the slightest degree to prove that Dupuy was authorized to sign the statement with the name of the defendant, and, when it was offered in evidence by the plaintiff, it was objected to, as other statements offered with it also were, as being inadmissible, on the ground that it was not signed by him, or that he had any agency in making up the account, and it being in evidence that these papers were forwarded from the Isthmus when Mr. Charlier was not there. The objections were overruled, and this as well as the other accounts included in the offer were received in evidence, and to that ruling the defendant excepted; and this exception, as the defendant is not shown to have had any agency whatever in making up these statements, or any knowledge of the fact that his name had been subscribed to it in this manner, or that he had authorized the person making use of it so to subscribe it, and that he was absent from the plaintiff’s place of business at the time when this was done, certainly appears to have been well taken. Proof of what Mr. Dupuy may have in this manner stated concerning the second credit for this sum of $50,000 was in no respect admissible against the defendant. They were, it is true, alleged in the complaint to have confederated and combined together in abstracting the money of the company; but no evidence had been given, when this statement was offered, tending to prove any confederation or combination between these two individuals. If the money had been abstracted, as it was charged it had, while the defendant was in control of the affairs of the company as its acting cashier, it was taken by him, and he was accountable for it; and if he had made, or authorized to be made, this second credit for this one sum of $50,000, which would balance up the apparent deficit claimed to appear from the books, that would be a circumstance of weight and force tending to establish the plaintiff’s case: and, as it was received in evidence, the jury would be inclined to, and probably did, act upon it as testimony sustaining this conclusion.
An account for the month of March, 1885, received at the New York office in August of that year, was also allowed to be read in evidence against these objections and this exception on the part of the defendant. This account showed the balance of the silver and gold on hand at the Isthmus at the close of that month; and it was offered, and had some tendency, to fortify the position taken by the plaintiff, that there was a deficiency in its cash accounts. But the defendant was in no manner a party to this statement. It was made and subscribed by Mr. Dupuy as the cashier and auditor of the company. Another account for the month of October, 1885, was made out in the same manner, and received in New York on the 15th of December, stating the balance of gold and silver on hand at the close of that month. A still further and similar account was received in evidence for the month of November, and another for the month of December, made and attested only by Mr. Dupuy as cashier and auditor. For these accounts, or the statements contained in them, the defendant could not be held responsible; neither were they admissible as evidence having any tendency whatever to establish the charge made against him for this defalcation. And even if he himself and Dupuy had been confederated together, as the charge was contained in the complaint, but not proved, these statements, made subsequent to the time when the defalcation, if it took place, had actually occurred, would not then be admissible against the defendant; for it is only such acts and statements as may accompany the *531 progress or execution of the conspiracy, made by one of the parties to it, that are admissible against the other.
Before these statements were received in evidence, letters which passed between the defendant and his brother, Vandyke Charlier, who was a bookkeeper in-the employment of the plaintiff at the Isthmus, were allowed to be read in evidence. The first of these letters was dated on the 25th of October, 1885, and was from Vandyke Charlier to the defendant, and this letter was answered by the defendant by another dated on the 9th of November, 1885. It did appear by this correspondence, clearly, as well as by the general tenor of other evidence, that the defendant was absent from the Isthmus, certainly, from the latter part of October, 1885, and could have had no direct act or participation in making out the accounts and statements which have been mentioned. These letters were objected to; but certainly the. one which was first written, as well as the answer to it from the defendant, were admissible in evidence in support of the plaintiff’s case, and that which was written by the defendant had a tendency in this direction. But the fact that Vandyke Charlier stated that he had made a mistake in his coal account, which he proposed to correct by another entry of twice the amount, was not evidence in support of the existence of this deficit, for it had no reference whatever to the cash; but it was suggested that a mistake had been made which in this way could be corrected, and that drew out this answer from the defendant. The other letters written by Vandyke Charlier to the defendant related to the general condition of his own transactions in the way of buying and selling gold, which was a business in which the defendant himself was shown to have been engaged while he was upon the Isthmus; but what Vandyke stated in these letters, which was not assented to or adopted in any manner by the defendant, was not evidence against him. The same thing is true as to a similar letter written in November, 1885, to the defendant by Dupuy, the cashier. They could have had no other or greater effect in the case than to tend to prejudice it against him; and that was not corrected by the further direction which the court gave to the jury, that they should not consider the acts and declarations'1 of Dupuy in the absence of the defendant, unless the former was a party to the fraud, for there was no proof of such joint co-operation between these persons as would allow the letter or the statement to be received in evidence at all. The letters with the exceptions mentioned contained no legal evidence which could be considered as confirmatory of the plaintiff’s allegations. They were no more than the unauthenticated statements of the writers, not appearing to have been authorized or approved in any manner by the defendant, and consequently not evidence against him. These letters were received after they had been objected to on the part of the defendant as inadmissible, irrelevant, and immaterial; and to the rulings allowing them to be read the defendant’s counsel excepted.
It has also been objected that the court erred in its direction to the jury that “it is admitted that, when the cash came to be counted in January, it was short to an amount larger than the amount claimed here, and to an amount larger than this draft. ” It is not entirely clear to what this direction referred; but if it was intended to remind the jury that the defendant had, upon the trial, admitted this to be the case, the statement was unsupported, and no evidence has been found in the case sustaining the statement as it was here made. The most that appears to have been said upon this subject was obtained from the witness George C. Power, who testified that the defendant spoliate him on the subject of the deficit in the cash. He was then asked: “ Was the deficit communicated to him?” and he answered: “Yes, sir. I told Mr. Charlier and Mr. Dupuy. They said they could not understand how the deficit occurred, unless there was some error in the books.” In this conversation the deficit was stated in round numbers to amount to the sum of $70,000. He further testified that the defendant had pointed out to him no *532 errors in the books subsequent to Ms leaving the Isthmus, and no error changing the amount of the deficit. Additional testimony was given upon the same subject by the witness Frank G. Ward. He was asked: “Did Elie S. Charlier, the defendant, ever say anything to you as to how this deficit arose?” and his answer was: “Yes, sir; that it was undoubtedly negligence or gross errors in the books, which would be found in time by the parties who were examining them,—Messrs. Powers and Hoyes. This was the only explanation he ever gave as to how this deficit occurred.” And he testified, further, that no error had been found in the books which would account for this deficiency of over $55,000 and odd in gold. These statements contained no admission by the defendant that there was this deficiency, and no evidence had been found in the case having any more direct tendency than this to admit its existence. The defendant himself, in his own evidence, denied it, although he stated upon his cross-examination that upon footing up certain portions of the books, as they were presented to him at the trial, a deficiency appeared from the items which were footed, amounting to about the sum included in this fictitious credit of the draft of $50,000. But his testimony was direct and positive that, when he turned over the safe and the cash accounts before he left the Isthmus, there was not a cent of deficit in them. This direction of the court appears, therefore, to have arisen out of a misapprehension, and is undoubtedly an error which the defendant has the just right to complain of. It is not necessary that an exception should have been taken to it to.entitle the defendant to the benefit of the error. It was a misdirection of the court.; and, where that may be .made upon a material part of the controversy, the party affected or injured by it, who is finally defeated in the litigation, has the right to make it the foundation of a motion for a new trial. Pettis v. Pier, 4 Thomp. & C. 690. The judgment and order should be reversed, and a new trial directed, with costs to the appellant to abide the event.
Barrett, J., concurs. Van Brunt, P. J., concurs in result.